IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| ROMANCE DESUAVE ARMSTRONG, | 3:16-cv-00033-RGE-HCA |
| Plaintiff, | |
| vs. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | REPORT AND RECOMMENDATION |
| Defendant. | |

Plaintiff Romance Desuave Armstrong requests that this Court reverse Defendant Social Security Commissioner's[1] decision denying his claim for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1385, and remand to the ALJ to appropriately weigh the evidence on the record. The Commissioner requests that the Court affirm the denial of benefits. This Court reviews the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). The Court has reviewed the entire transcript and, for the reasons that follow, the Court affirms the Commissioner's decision.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Berryhill is substituted for Carolyn Colvin as Defendant in this suit, which may continue without further action. *See* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

# I. PROCEDURAL BACKGROUND

Armstrong protectively filed a Title XVI application for SSI on March 22, 2013, alleging a disability onset date of October 8, 2011. (AR[2] 190).[3] In the Application Summary, the Social Security Administration (SSA) deemed the application effectively filed as of March 29, 2013. (AR 162–67). The Commissioner initially denied Armstrong's claim on June 27, 2013 (AR 60–71), and again upon reconsideration on October 9, 2013. (AR 72–85). Armstrong timely requested and received a video hearing before Administrative Law Judge (ALJ), John M. Wood, on November 5, 2014. (AR 31–40). Armstrong, however, did not appear at the hearing because he was arrested October 30, 2014, placed in the Scott County, Iowa Jail, and transferred to state custody on November 7, 2014. (AR 230). Records from the Scott County Jail indicate Armstrong was sentenced to a term of imprisonment of 5 years on November 6, 2014. (AR 231–33). On November 21, 2014, Armstrong's attorney requested that the ALJ make a decision based on the record, and waived personal appearance. (AR 230). On January 16, 2015, the ALJ opined that Armstrong was not disabled at any time between March 22, 2013 (date of the relevant protectively filed disability application) and January 16, 2015 (date of the ALJ's decision).[4] (AR 26). The Commissioner's decision became final when the Appeals Council denied Armstrong's request for review (AR 8–11) on March 25, 2016. (AR 1–5). On May 3, 2016, Armstrong timely filed the Complaint in this case. (ECF 1). On September 1, 2016, this case was referred to the undersigned for a Report and

---

[2] All citations to "AR" refer to the appropriate page of the administrative record.

[3] Mr. Armstrong filed at least one prior application, which was denied October 7, 2011. (AR 41–55).

[4] The earliest date that SSI benefits are payable is the month following the month in which the application was filed. 20 C.F.R. §416.330, §416.335. In this case, April of 2013 would have been the earliest that Armstrong could have received SSI benefits if approved.

Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF 8). This matter is fully briefed and ready for decision. (ECF 9–10).

## II. FACTUAL BACKGROUND

Born September 15, 1987, Armstrong was twenty-five years old when he filed for benefits. (AR 162). Armstrong has a limited education; he completed the 9th grade (AR 185), but does not have a GED. (AR 401). Armstrong has limited work experience. Prior to his alleged disability onset date of October 8, 2011, Armstrong most recently worked as a cook, hotel houseman, and at an apartment complex in 2010. (AR 178, 185, 224). His peak annual earnings were $4,172.27 in 2010. (AR 169, 178). Armstrong has not worked since October 2010.[5]

On Armstrong's April 2013 Function Report, he claimed he needed assistance dressing, feeding himself, and taking medications; he could not shave, prepare meals, do laundry, clean/do housework, drive, play football or videogames; he had limited success bathing himself. (AR 201–08). Armstrong told Dr. Lodico that he could eat without assistance, but dropped food. He needed help wiping himself after using the toilet, and he could not grip a pencil. (AR 401). During a Disability Exam in June 2013, Paul Hartmann, M.D., noted that Armstrong could perform self-care with his left hand. (AR 393).

### A. Physical Medical History

The medical records in this case are sparse, and some of the evidence reviewed by the ALJ and now the Court is taken from a prior unfavorable ALJ decision in October 2011, which summarized records not in the present record (regarding Armstrong's left hand and knee).[6] In the

---

[5] Examining psychologist Collin Lodico, Ph.D., noted that Armstrong "worked at Hardees for one month in 2012." (AR 401). However, this appears to be a typo; Armstrong worked at Hardees in 2010. (AR 178, 185, 224).

[6] An ALJ may consider all evidence in the agency record, even evidence from a prior decision or hearing. *See Navas v. Astrue*, Civil Action No. 06-3677, 2007 WL 2317408, at *4 (E.D. Pa. July

present claim for SSI, as stated in his 2013 Disability Report, Armstrong alleges disability due to a loss of function in both of his hands. (AR 184). In his Function Report, he stated, "I do not have hands." (AR 205). At the November 5, 2014, hearing before the ALJ, Armstrong's attorney argued that the loss of functioning in Armstrong's right hand was "the game changer" that demanded a different result from the October 2011 ALJ Decision (AR 44–55) denying Armstrong disability benefits. (AR 38-39). Armstrong also complains of a bullet in his left knee and back problems. (AR 184, 201–08).

### i. Left Hand and Left Knee Injury

Armstrong sustained multiple gunshot wounds to his left wrist and left knee on separate occasions in approximately 2005 and 2006. (AR 47). According to Department of Corrections ("DOC") records, Armstrong reported surgery on the left wrist and knee in 2004, but the timing is inconsistent with the reported 2005 and 2006 shooting dates. (AR 278). Armstrong claims to have trouble standing for more than two hours because doctors could not remove a bullet fragment in Armstrong's left kneecap. According to Armstrong the bullet was allegedly too close to an artery for surgery. (AR 51, 201, 394). An x-ray was done on February 26, 2012, and showed that there were bullet fragments embedded in Armstrong's left knee. (AR 293, 310–11).

In support of his prior application, Armstrong stated his left hand was "all the way dead. No feeling and it's very stiff. Can't carry or hold things." (AR 49). In the 2011 ALJ decision, the ALJ noted that Armstrong had a "'0' grip strength of the left hand and the fingers could not be

---

30, 2007), *aff'd sub nom. Navas v. Comm'r of Soc. Sec.*, 289 F. App'x 555 (3d Cir. 2008); *see also Wolf v. Chater*, 86 F.3d 1072, 1079 (11th Cir. 1996); *Leonard v. Astrue*, 487 F. Supp. 2d 1333, 1337 (M.D. Fla. 2007); *Naudain v. Apfel*, 119 F. Supp. 2d 812, 818 (C.D. Ill. 2000). The Court reviews the same record.

extended or opposed . . . ." (AR 50). Armstrong had a "significant decreased range of motion of the left arm, wrist and hand." (AR 51).

DOC medical records provide minimal information about Mr. Armstrong's condition post-surgery. (AR 240–363). As recently as 2012, the DOC labeled Armstrong as having "No Restriction" for work. (AR 249, 311). Iowa Medical Correctional Center (IMCC) saw Armstrong in June 2012 and noted only minor disabilities related to the gunshot wounds. (AR 293). In September 2012, Armstrong sought a bottom bunk restriction renewal because his "knee goes out" and "swells" when he jumped down from the bunk, and climbing up was difficult as his "left hand is already dead from a gun shot [sic] wound." (AR 293). Shelia Klein, R.N., denied his request for bottom bunk and noted that he has "no difficulty with his gait and per security he climbs stairs just fine." (AR 293).

In June 2013, after Armstrong had filed his current application for SSI, Dr. Hartmann saw Armstrong for a Disability Exam. Dr. Hartmann measured Armstrong's range of motion and grip strength in his left hand and knee. Dr. Hartmann noted that Armstrong's left knee flexion was slightly diminished with crepitus. (AR 394, 396). Armstrong's left hand could not be fully extended and he could not make a fist. (AR 396). Dr. Hartmann also noted that Armstrong's left-hand grip was very poor, scoring a one on a five-point scale, and that Armstrong had a greatly diminished flexion of the left wrist (0º–10ºout of 0º–60º range). (AR 396).

### ii. Right Hand

In March 2013, Armstrong sustained a right palm laceration with penetrating glass. (AR 382). On March 14, 2013, Apurva Shah, M.D. performed surgery at the University of Iowa Hospitals and Clinics to repair the nerves and tendons in his right hand. (AR 379, 383). At a follow-up visit with Dr. Shah on March 28, 2013, Armstrong had some tingling to the tip of his right long

finger and had some pain, but his incision was well healed. (AR 385). His arm was placed in a short-arm cast with the fingers in the intrinsic-plus position and wrist in slight flexion. (AR 385). The cast was bivalved so Armstrong could remove it for skin care. He was instructed to protect the cast from water when showering and was directed to see the physical therapist for range of motion exercises later that day. (AR 385).

At an April 24, 2013, visit with Dr. Shah, Armstrong told the doctor he had not followed through with physical therapy due to transportation difficulties. (AR 389). He also discontinued using the cast because it became "moldy," but failed to inform the clinic he had discontinued immobilization. (AR 389). Armstrong's right hand demonstrated significant stiffness with the metacarpophalangeal joints in a position of 70 degrees of flexion and the interphalangeal joints in extension. (AR 389). He was not cooperative with examination, making it difficult to assess passive motion. Dr. Shah noted continued lack of sensation along the ulnar border of the long finger and radial border of the ring finger as well as advancing Tinel's sign in the hand.[7] (AR 389). Dr. Shah reported that Armstrong had "been completely noncompliant with splinting and physical therapy" and "neglected his recovery process." (AR 390). Dr. Shah "strongly recommended initiation of therapy" as Armstrong was "at significant risk for persistent/permanent stiffness and joint contracture." Dr. Shah offered Armstrong a physical therapy appointment that day at the University of Iowa, but Armstrong declined the offer. (AR 390). Armstrong was to return to Dr. Shah for a follow-up visit in four to six weeks. (AR 390). There are no records of a follow-up appointment with Dr. Shah after this visit.

---

[7] Tinel's sign is "a tingling sensation felt in the distal portion of a limb upon percussion of the skin over a regenerating nerve in the limb." *Tinel's Sign*, <u>Merriam-Webster's Medical Dictionary</u> (2016), https://www.merriam-webster.com/medical/Tinel's%20sign (last visited June 19, 2017).

The next medical records for Armstrong are a report from a June 5, 2013, disability consultative examination with Paul Hartmann, M.D., at Genesis Medical Center. Dr. Hartmann noted that Armstrong's right hand flexion was 0º–30º, and his right hand could not be fully extended or make a fist. (AR 393, 396). Armstrong could not oppose the fingers of the right hand and his grip strength was very poor, ranking a one on a five point scale. (AR 396). Dr. Hartmann opined that Armstrong's "remaining physical capacities are significantly limited and he is disabled." (AR 394).

On June 27, 2013, a state agency medical consultant opined that Armstrong's right upper extremity should not require limitations once healed. (AR 64–70). The medical consultant noted that he expected the right hand injury to improve by March of 2014. (AR 70). The medical consultant noted Dr. Hartmann's more restrictive opinion, but explained why he had discounted Hartmann's opinion in reaching his conclusions. (AR 67–69). The consultant further made a finding that Armstrong was not disabled. (AR 69).

### iii. Obesity

In the 2011 ALJ decision, the ALJ found that "obesity" was one of Armstrong's severe impairments. (AR 47). At that time, Armstrong's Body Mass Index (BMI) was approximately 32.7, placing him in the "obese" range. (AR 47). According to Armstrong's medical records, his BMI has fluctuated only slightly. In March 2013, during an orthopedic examination with Dr. Shah, Armstrong's BMI was 32.78. (AR 382). In June 2013, during a disability examination with Dr. Hartmann, Armstrong was measured at 5'10'' and weighed 215.8 pounds, putting him at a 30.96 BMI. (AR 394).

## B.  Mental Medical History

While Armstrong was incarcerated in the Iowa Department of Corrections, he had a Modified Mini Screening in June 2012, where he scored 3/22, which put him in the category "low likelihood of mental illness" (AR 348–52). In July 2012, he had another screening and scored 10/22, which put him in the category "high likelihood of mental illness." (AR 316).[8] Armstrong reported OCD-like symptoms to the Iowa State Penitentiary medical staff in July 2012. (AR 319). Josie Hizon, M.D., diagnosed Armstrong as mildly depressed with an average IQ in June 2012. (AR 334). Armstrong was prescribed medications for his mental health conditions. (AR 248, 319, 334).

Dr. Collin Lodico also conducted a mental status examination on September 26, 2013. (AR 400–04). Armstrong performed nearly perfectly on his Mini Mental State Examination, scoring 28 out of 30. (AR 403). Dr. Lodico estimated Mr. Armstrong had low average intelligence, but would not have difficulty remembering, understanding, or carrying out simple instructions or procedures. (AR 404). Dr. Lodico opined that Armstrong's judgment did not seem impaired and Armstrong would not have significant difficulty getting along with others or responding to changes in routine. (AR 404). Dr. Lodico also opined that Armstrong appeared to have the capacity to maintain attention, concentration, and pace on a full time basis with at least simple and routine tasks. (AR 404). Dr. Lodico assessed Armstrong with a Global Assessment of Functioning (GAF) score of 61.[9] (AR 404).

---

[8] *Screening for Co-Occurring Disorders Using the Modified Mini Screen (MMS): User's Guide*, OASAS (June 2006), https://www.oasas.ny.gov/treatment/cod/documents/MINIScreenUsersGuide.pdf.

[9] A GAF score is used by mental health practitioners and physicians to subjectively rate a claimant's social, occupational, and psychological functioning. A score of 65 indicates mild symptoms of depression or some difficulty in social or occupational functioning. *See Cox v. Astrue*, 495 F.3d 614, 620 (8th Cir. 2007).

# III. ALJ DECISION

In order to qualify for benefits under the Act, Armstrong must demonstrate he is disabled. The Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §416.905. Both the impairment and the inability to engage in any substantial gainful activity must last or be expected to last not less than twelve months. *Barnhart v. Walton*, 535 U.S. 212, 217–25 (2002). On January 16, 2015, the ALJ denied Armstrong's claim for SSI. (AR 26). Adhering to the requisite five-step evaluation,[10] the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since March 22, 2013, the application date (20 C.F.R. § 416.971 *et seq*.). (AR 17).

2. The claimant's severe impairments are obesity and history of multiple gunshot wounds with residuals (20 C.F.R. § 416.920(c)). [The ALJ found that "the right hand injury cannot be considered a severe impairment" because it is not possible on the record to determine whether the injuries would be significantly limiting for at least twelve months when considering "the limited amount of evidence and the limited time period covered by the available evidence." (AR 19). The ALJ found Armstrong had "only mild

---

[10] 20 C.F.R. § 416.920(a)(4)(i)–(v) (2012) provides that "(i) [a]t the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . . (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement of § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . . (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of [subpart P of part 404 of this chapter] and meets the duration requirement, we will find that you are disabled. . . . (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . . (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled . . . ."

difficulty in maintaining concentration, persistence, or pace," or social functioning and his mental impairment was nonsevere. (AR 21)].

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). (AR 21). [The ALJ determined that Armstrong's severe physical impairments were found to not meet or medically equal any relevant listed impairment in the 2011 decision denying benefits. The ALJ further found that there is no more recent credible objective medical evidence which would contradict this prior conclusion. (AR 21)].

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) except limited to lifting and carrying no more than 10 pounds frequently and 20 pounds occasionally; limited used [sic] of his non-dominant left upper extremity only as an assist to the dominant extremity with regard to steadying large objects and that sort of thing; and the claimant would have to avoid temperature extremes, extreme vibrations, extremes of humidity; and no climbing ladders, ropes or scaffolds or exposure to other unprotected heights. (AR 22).

5.  The claimant has no past relevant work (20 C.F.R. § 416.965). (AR 25).

6.  The claimant was born on September 15, 1987 and was 25 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 C.F.R. § 416.963). (AR 25).

7.  The claimant has a limited education and is able to communicate in English (20 C.F.R. § 416.964). (AR 25).

8.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 C.F.R. § 416.968). (AR 25).

9.  Considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 416.969 and 416.969(a)). (AR 25).

10. The claimant has not been under a disability, as defined in the Social Security Act, since March 22, 2013, the date the application was filed (20 C.F.R. § 416.920(g)). (AR 26).

(AR 15–26).

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

A court will uphold an ALJ's decision if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence is 'less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.'" *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Maresh v. Barnhart*, 438 F.3d 897, 898 (8th Cir. 2006)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971) (reasoning that substantial evidence means "more than a mere scintilla"). A court considers evidence that both supports and detracts from the ALJ's decision. *Moore v. Astrue*, 623 F.3d 599, 605 (8th Cir. 2010). If substantial evidence supports the ALJ's decision, a court will not reverse merely because substantial evidence exists in the record that would support a contrary outcome, or because the court would have determined the case differently. *Davidson v. Astrue*, 578 F.3d 838, 841–42 (8th Cir. 2009) (citing *England v. Astrue,* 490 F.3d 1017, 1019 (8th Cir. 2007)); *see also Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations and internal quotation marks omitted).

## V. DISCUSSION

Armstrong requests that the Court reverse and remand the ALJ's decision because the ALJ:

a) should have concluded that Armstrong's right hand impairment constituted a severe impairment;

b) should have found Armstrong was disabled because he met the criteria of listing 1.02(B); and

c) used the wrong RFC and improperly used the October 2011 vocational expert hypothetical,

which did not take into account the right hand impairment, to determine whether there were jobs available for Armstrong in the national economy.

The crux of this case is the extremely limited record presented by Armstrong to the ALJ regarding the ongoing nature and severity of any limitations due to the right hand injury. Armstrong's unavailability for a new consultative examination in 2014 and his request for a decision based on the record that existed as of November 2014 further complicate the situation.

### A. The ALJ Appropriately Classified Armstrong's Right Hand Impairment

Armstrong argues that the ALJ erred at Step Two in concluding that Armstrong's right-hand injury was not a severe impairment. The claimant bears the burden to establish the severity of an impairment, or combination of impairments. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). "Severity is not an onerous requirement for the claimant to meet, *see Hudson v. Bowen*, 870 F.2d 1392, 1395 (8th Cir.1989), but it is also not a toothless standard." *Kirby v. Astrue,* 500 F.3d 705, 707–08 (8th Cir. 2007) (finding that slight abnormalities do not amount to severe impairments). An impairment is "severe" if it "significantly limits [Armstrong's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c).

The ALJ found that the only significant and potentially ongoing new physical impairment sustained by Armstrong since the 2011 ALJ decision is the right hand injury. (AR 17). Armstrong claimed that the right hand injury significantly limited him physically. On Armstrong's April 2013 Function Report, Armstrong claimed that he did "not have hands." (AR 205). As a result, he claimed he needed assistance dressing and feeding himself; taking medication; shaving; laundry; cleaning; driving; writing with a pencil; and using the toilet. (AR 201–08; 401). It is Armstrong's burden to provide medical evidence showing that he has an impairment and how severe it is during the time he claims to be disabled. *See* 20 C.F.R. § 416.912.

The ALJ considered the record as a whole and appropriately evaluated the credibility of Armstrong's subjective complaints. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). For example, although Armstrong claimed not to be able to drive, in October 2014, Armstrong was arrested for driving without a license. (AR 232). Dr. Shah noted that Armstrong was uncooperative during his follow-up physical examination in April 2013, making it hard to evaluate passive range of motion (AR 389). The ALJ also may point to infrequent treatment to show that the claimant's alleged severity, persistence, and limiting effects of an impairment are not credible. *Gregg v. Barhart*, 354 F.3d 710, 713 (8th Cir. 2003). The ALJ properly relied on the limited treatment records, Armstrong's noncompliance with treatment recommendations and physical therapy, and Armstrong's inconsistent medical follow-up in reaching his decision. The record shows Armstrong only had March 2013 and April 2013 follow-up treatment examinations following his right-hand surgery. (AR 372–77; 389–90). In his last follow-up treatment examination that is on the record, Dr. Shah noted that Armstrong was "at significant risk for persistent/permanent stiffness and joint contracture" if he did not begin physical therapy. (AR 390). Dr. Shah ordered Armstrong to attend another follow-up appointment with him; however, there is no record of him attending a subsequent appointment. It is unclear whether Armstrong attended any physical therapy, but there are no documents from physical therapy appointments on the record.[11] His last physical examination was in June 2013, approximately three months after his right hand surgery, for his Disability Examination, where he reported he could not use his right hand very well and examination results showed a 1/5 grip strength in both of his hands. (AR 393).

---

[11] The University of Iowa records noted that Armstrong would "see our physical therapist today" in March 2013. (AR 385). There is no evidence on the record showing that Armstrong saw the physical therapist that day. Dr. Shah noted Armstrong agreed to "a first rehabilitation visit" in April 2013. (AR 390). There is no evidence on the record showing that Armstrong scheduled and saw a physical therapist.

His last in-person psychological consultative examination for his disability occurred in September 2013, approximately six months after his right hand surgery, where Dr. Lodico reported Armstrong's handshake had no pressure. (AR 403).

Because Armstrong failed to meet his burden, the ALJ did not err in finding that there was insufficient evidence on the record to "determine whether the injuries to the right hand would be significantly limiting for at least twelve months." (AR 19). Armstrong claims error because the ALJ did not state whether the right hand impairment could be expected to last for twelve months. While the ALJ's terminology was not a perfect rendition of the applicable standard, it is apparent from the decision as a whole that the ALJ found that Armstrong had not met his burden to show that the right hand injury constituted a severe impairment. Armstrong presented no evidence to show that the right hand injury was significantly limiting after June of 2013, including no evidence of ongoing limitation during calendar year 2014. Armstrong now seeks to escape his failure to meet his burden by requesting that the ALJ go back in time to June of 2013, ignore the sixteen months that passed between 2013 and the ALJ decision, and speculate as to whether the impairment could have been expected to last twelve months as viewed in the summer of 2013. The Court does not find Armstrong's argument persuasive, especially given that Armstrong requested a decision based on the limited record he had presented.

Armstrong did not attend the November 5, 2014, hearing because he was incarcerated. Both the ALJ and Armstrong's attorney noted that a new consultative physical examination would be helpful to determine if there had been a long-term impact from the right hand injury. The ALJ continued the hearing to allow Armstrong's attorney to determine Armstrong's whereabouts and whether Armstrong could be scheduled for a consultative examination. (AR 33–40). Armstrong's attorney notified the ALJ that Armstrong was unavailable for a consultative examination because

he was serving a prison sentence; and the attorney requested that the ALJ decide based on the current record as discussed at the November 5th hearing. (AR 19, 230). When reviewing the record that was available, the ALJ's decision finding the right hand injury non-severe is supported by the record as a whole. The ALJ appropriately considered the record, weighed the evidence, and classified Armstrong's right hand injury.

Even if the ALJ should have determined that the right hand injury qualified as a severe impairment for the purpose of Step Two of the evaluation, Armstrong has not proved this affected his disability results. The failure to identify a particular severe impairment at Step Two is harmless when the ALJ finds a severe impairment and proceeds to the next Steps, where the ALJ then considers the whole record, including the non-severe impairments. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005); *Hall v. Colvin*, No. C15-15-CJW, 2016 WL 1267759, at *5 (N.D. Iowa Mar. 30, 2016). Here, the ALJ found at least one severe impairment and moved on to the next Steps. The ALJ considered Armstrong's right-hand injury when determining his RFC.

## B. The ALJ Appropriately Found that Armstrong did not Meet Any Listing Criteria

Armstrong argues that the ALJ should have found he was disabled because he met or medically equaled the criteria of Listing 1.02(B). The burden was on Armstrong to prove that he met or medically equaled all the specified criteria for the particular listing. *See Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). Listing 1.02(B), *Major dysfunction of a joint(s) (due to any cause)*, is "characterized by gross anatomical deformity . . . and <u>chronic</u> joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s)." It requires the medical record to show "involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross

movements effectively." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 1.02(B) (emphasis added). "The inability to ambulate effectively or the inability to perform fine or gross movements effectively must have lasted, or be expected to last, for at least 12 months." *Id.* For example, an individual has an inability to perform fine and gross movements if he cannot prepare a meal and feed himself, take care of his personal hygiene, or handle papers or files. *Id.*

In the 2011 ALJ Decision, the ALJ found that "[t]he claimant has not demonstrated she [sic] has a musculoskeletal impairment that meets or equals Listing at 1.00 et seq. [sic]." (AR 48). In the recent unfavorable 2015 ALJ Decision, the ALJ found "[t]here is no more recent credible objective medical evidence which would contradict" the 2011 ALJ Decision finding no Listing impairment. (AR 21). It was Armstrong's burden to develop this record and he failed in this regard.

Armstrong argues that the right hand injury contradicts the 2011 ALJ Decision because now he has no function in both hands. The ALJ's decision in this case rested largely on a determination of Armstrong's credibility, and the lack of medical records showing treatment of his right hand injury. *See Polaski*, 739 F.2d at 1322; *see infra* Part V(A).

The Court must not re-weigh the evidence in the record. *See Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). There is substantial evidence in the record to support the ALJ's credibility determination, *see supra* Part V(A), including the fact that Armstrong reported that he could do self-care with his left hand. (AR 393). The ALJ did not err in determining that Armstrong did not meet or medically equal the criteria of Listing 1.02(B).

### C. The ALJ Properly Determined Armstrong's RFC

Armstrong argues that the ALJ failed to account properly for his right hand injury when determining his RFC. *See Polaski*, 739 F.2d at 1322. The ALJ determined that Armstrong had an RFC to perform light work, but "limited used [sic] to his non-dominant left upper extremity only

as an assist to the dominant extremity with regard to steadying large objects and that sort of thing; . . . and no climbing ladders, ropes, or scaffolds or exposure to other unprotected heights." (AR 22). This is the identical RFC evaluation used as the basis for the 2011 ALJ Decision. The key issue is whether the ALJ should have included any limitations associated with the right hand injury in the 2015 RFC.

Armstrong must establish his RFC on the record. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *see also Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006). In making the RFC determination, the ALJ must consider the record as a whole, including Armstrong's credible subjective complaints regarding exertional and nonexertional impairments, doctor's opinions, and the objective medical record or lack of objective medical records regarding his right hand injury. (AR 22–25). The ALJ must include only those limitations he finds the evidence establishes. *Cruze v. Chater*, 85 F.3d 1320, 1323 (8th Cir. 1996). At issue is whether the record before the ALJ established limitations related to the right hand injury that must be included in the RFC. Put another way, the issue is whether there is substantial evidence to support the ALJ's RFC determination that does not include any right hand limitations. The Court concludes that the ALJ properly evaluated the record evidence and based his RFC finding on substantial evidence in the record as a whole.

As discussed previously, the ALJ properly discounted Armstrong's subjective complaints regarding the persistence, severity, and limiting effects of his hands for a variety of reasons, including because Armstrong had a limited treatment record regarding the right hand injury, his treating physician noted that that he was uncooperative during flexibility testing, and Armstrong was arrested for driving without a license even though he reported he could not drive.

The ALJ also properly weighed the doctors' opinions. Ordinarily, a treating doctor's medical opinion is entitled to controlling weight if "it is supported by medically acceptable techniques and is not inconsistent with substantial evidence in the record." *Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016). The ALJ must consider all medical opinions in a case record, but give more weight to an opinion if the source examined the claimant, has a treatment relationship with the claimant, is supported by laboratory findings/evidence, and supporting explanations for their opinions. If the ALJ chooses to weigh the opinion evidence differently, the ALJ must explain why he departed from the hierarchical norm. *See Davis v. Schweiker*, 671 F.2d 1187, 1189 (8th Cir. 1982).

There is certainly evidence that indicates that in the months immediately following the right hand surgery Armstrong had limitations associated with the right hand. Dr. Hartmann's results showing Armstrong had a right grip strength of 1/5 is consistent with treating physician Dr. Shah's pre-surgery warning of stiffness, and Dr. Shah's post-surgery warning that failure to attend physical therapy could result in permanent stiffness and joint contracture. (AR 390). Dr. Hartmann, Armstrong's examining consulting physician, opined on June 5, 2013, that Armstrong's physical capacities were significantly limited and that he was disabled. (AR 394). The Court's job is not to reweigh the evidence, but to determine if the substantial evidence in the record supports the ALJ's decision. The Court concludes that the ALJ properly evaluated and explained why he gave more weight to the State Agency Medical Consultant opinion and discounted Dr. Hartmann's opinion.

The ALJ found that Dr. Hartmann's opinion was not credible because Armstrong had time to adjust to his left hand/wrist issues, and Dr. Hartmann did "not appear" to inquire about Armstrong's recent right-hand surgery, compliance with rehabilitation, or indicate whether Armstrong's cooperation/effort was adequate. However, even though Dr. Hartmann does not note

the exact date of the right hand surgery, he does not ignore that Armstrong had a "past surgery" after "an injury penetrated an important nerve and tendons on the right wrist." (AR 394). Additionally Dr. Hartmann did not indicate whether Armstrong was cooperative, but he did opine that Armstrong's physical capacities were significantly limited in June of 2013.

The ALJ gave significant weight to the opinion of the State Agency Medical Consultant. The opinion of the State Agency Medical Consultant was the most current (although it was over sixteen months old at the time of the 2015 decision) medical evidence in the record concerning Armstrong's medical status and right hand injury. On June 27, 2013, the State Agency Medical Consultant opined that the right upper extremity "should not require limitations once healed." (AR 67). Armstrong presented no evidence regarding his right hand injury or that it had not properly healed after June 2013. The record is devoid of any evidence showing that the right hand injury created any limitations for Armstrong in the latter half of 2013 or calendar year 2014. Furthermore, Armstrong, through his attorney, indicated he was not available for a new consultative examination and requested that the ALJ decide based on the record as it stood. Accordingly, substantial evidence in the record as a whole supports the ALJ's RFC finding.

### D. The Hypothetical Question and Job Finding

Armstrong also argues that the ALJ erred by relying on the past vocational expert testimony from 2011, instead of obtaining new vocational expert testimony. The vocational expert's prior testimony from Armstrong's previous disability claim covering a different time does not refer to the right hand injury. *See Turner v. Barhart*, 427 F. Supp. 2d 885, 892 (S.D. Iowa 2006) ("The vocational expert's testimony must be in response to a properly formulated hypothetical question which relates with precision the claimant's physical and mental impairments and limitations."). A vocational expert's hypothetical does not need to include non-severe impairments when the record

does not suggest the impairments caused lasting limitations. *See Hilkemeyer v. Barnhart*, 380 F.3d 441, 447 (8th Cir. 2004).

During the 2014 ALJ hearing, Armstrong's representative admitted that the 2011 "hypothetical was fair," for Armstrong's previous claim for disability, but argued that the right hand injury was the "big change" that required a different hypothetical. (AR 39). The vocational testimony in 2011 was based on Armstrong's age, education, work experience, and RFC at the time of the 2011 hearing (prior to Armstrong's right hand injury). (AR 54). This Court has found that the ALJ appropriately labeled the right hand injury as non-severe and, thus it did not need to be included in the hypothetical, making the 2011 hypothetical applicable.

The Act requires that "the Commissioner of Social Security . . . file a certified copy of the transcript of the record including the evidence upon which the finding and decision complained of are based." 42 U.S.C. § 405(g). The ALJ explicitly relied on the vocational expert testimony from the 2011 hearing, but failed to provide a record of the transcript of the hearing. At the November 2014 hearing, the ALJ advised Armstrong's attorney that he would rely on the 2011 vocational expert testimony if Armstrong was unavailable for a consultative examination and Armstrong's attorney did not object. (AR 31–40). While the ALJ should have included the transcript of the vocational expert testimony from the 2011 hearing in this record, the Court finds that the error was harmless given that the ALJ summarized the testimony and Armstrong did not object at the hearing to the use of the 2011 testimony. *See Paul v. Comm'r of Soc. Sec.*, No. 2:13-cv-14911, 2015 WL 1299980, at *1 (E.D. Mich. Mar. 23, 2015) (holding that the ALJ properly relied on vocational expert testimony from a prior hearing when the testimony was based on an essentially identical RFC assessment and citing the Ninth Circuit as authority); *Bryant v. Colvin*, No. 4:11CV00914 JLH, 2013 WL 3580641, at *5 (E.D. Ark. July 11, 2013) (declining to comment on the merits of

the claimant's argument that the ALJ should not have relied on past vocational expert testimony because the argument was moot); *Patton v. Astrue*, Civil Action No. TMD 10-3007, 2013 WL 459771, at *3–4 (D. Md. Feb. 6, 2013) (holding the ALJ did not err by relying on vocational testimony from a prior hearing three years before when the RFC did not change); *Neal v. Astrue*, Civil Action No. 09-14-GWU, 2010 WL 881913, at *4 n.1 (E.D. Ky. Mar. 8, 2010) (finding that the ALJ erred by omitting the vocational expert's testimony from the prior hearing on an earlier claim, but holding that the error was harmless because the testimony was "extensively quoted" and the claimant did not object to the omission of the evidence on the record); *Clark v. Astrue*, No. CV 08-07398-MLG, 2009 WL 2579486, at *4 (C.D. Cal. Aug. 20, 2009) (holding that the ALJ was in error for not including transcripts from the vocational expert testimony he relied on, but finding that the error was harmless); *Byrd v. Astrue*, No. 3:07-CV-121, 2008 WL 4327006, at *9 (E.D. Tenn. Sept. 16, 2008) (holding that the ALJ's reference to previous VE testimony was not an error because the RFC determination was based on other evidence and the claimant had an opportunity to review the prior testimony).[12]

---

[12] *But see Patterson v. Colvin*, No. 7:14-cv-664, 2016 WL 4126662, at *4 (W.D. Va. Aug. 2, 2016) (holding that "[r]emand is also appropriate because the ALJ relied on VE testimony from the 2011 hearing, which is outside the record before me"); *see also Painter v. Colvin*, No. CV-11-3126-JLQ, 2013 WL 2948159, at *12 (E.D. Wash. June 14, 2013) (finding that the ALJ should have asked "the same or similar updated hypothetical to the vocational expert in attendance" instead of relying on the vocational expert's testimony from a prior hearing not on the record); *Hubbard v. Sullivan*, No. 87-0177(R), 1989 WL 280255, at *3 (W.D. Va. Sept. 26, 1989) ("the court observed that it was unable to undertake a substantial evidence evaluation as regards the Secretary's findings as to alternative work capacity" because the ALJ relied on a vocational expert testimony from a prior hearing and did not include the transcript of the hearing).

## VI. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the ALJ's decision denying Armstrong SSI benefits. Accordingly, the Court recommends that the ALJ's decision be affirmed.

## VII. REPORT AND RECOMMENDATION AND ORDER

IT IS RESPECTFULLY RECOMMENDED that the Commissioner's decision to deny Armstrong disability insurance benefits be affirmed.

IT IS ORDERED that the parties have until **July 5, 2017**, to file written objections to the Report and Recommendation, pursuant to 28 U.S.C. 636(b)(1)(C). Any objections filed must identify the specific portions of the Report and Recommendation and relevant portions of the record to which the objections are made and must set forth the basis for such objections. *See* Fed. R. Civ. P. 72; *see also Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995). Failure to timely file objections may constitute a waiver of Plaintiff's right to appeal questions of fact. *United States v. Kelley*, 774 F.3d 434, 439 (8th Cir. 2014) (citing *Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

Dated this 20th day of June, 2017.

Helen C. Adams
Chief U.S. Magistrate Judge